Weldon V. LANE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 95–1082.

United States District Court, E.D. Pennsylvania.

March 12, 1996.

May 21, 1995. *See* Scheduling Order at ¶ 1.

Robert D. Marcinkowski, Huffman & Associates, Chadds Ford, PA, for Plaintiff.

Stephen J. Britt, James G. Sheehan, Asst. U.S. Attys., Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Defendant, the United States, has filed a motion to dismiss the complaint in this action, which was brought under the Federal

Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). For reasons discussed below, I will grant the motion.

## BACKGROUND

Plaintiff, Weldon V. Lane ("Lane"), is a World War II veteran who was captured by the German Army in Belgium in December of 1944. He was held by the Germans as a prisoner of war ("POW") for about four months, after which he managed to escape and rejoin the U.S. Army. During his captivity, Lane was forced into hard labor, starved, and physically abused, and he lost one-third of his total body weight. When he applied for Veterans' Benefits in 1948, the effects of malnutrition were still evident. Lane suffered heart attacks in 1988 and 1989. Following heart bypass surgery, he learned that many of the conditions to which he was subjected as a prisoner of war could have resulted in heart disease or damage. He reapplied for veteran's benefits in 1990, claiming his ischemic heart disease was a service-connected disability, attributable to his prisoner-of-war experience. The Department of Veterans Affairs ("DVA") arranged for a medical examination, determined that his service-connected residual disability was less than 10%, and denied him benefits.

Plaintiff claims the DVA had failed to notify him some years earlier of changes in benefits provided by the Former Prisoner of War Benefits Act of 1981 ("POW Act"), although the act required such notification. It states:

Sec. 6. (a) Not later than 90 days after the date of the enactment of this Act and at appropriate times thereafter, the Administrator **shall, to the maximum extent feasible** and in order to carry out the requirements of the veterans outreach services program under subchapter IV of chapter 3 of title 38, United States Code, **seek out former prisoners of war and provide them with information regarding applicable changes in the law, regulations, policies, guidelines, or other directives affecting the benefits and services** to which former prisoners of war

are entitled under such title by virtue of the amendments made by this Act.

POW Act of 1981, Pub.L. # 97–37, 95 Stat. 935. (emphases added). Plaintiff alleges that the DVA's only response to this directive was to publish pamphlets that listed conditions covered, including those that allegedly led to plaintiff's heart disease, and place them on informational display racks at various DVA offices. The pamphlet was not sent to former POW's who, like himself, were known to the DVA as having had medical problems resulting from their captivity. In addition, the pamphlet failed explicitly to address the changes in the laws, regulations, policies, guidelines, and other directives. Plaintiff contends that the Department's failure to seek him out and notify him individually of the changes in the law was in violation of the POW Act, was willful or negligent misconduct or deliberate indifference, and was the legal cause of physical and psychological illness and of consequent injury he has suffered for many years.

## DISCUSSION

### The Federal Tort Claims Act

■ The Federal Tort Claims Act ("FTCA") waives the government's sovereign immunity for injuries caused by tortious government action. It provides that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. There are, however, exceptions to the government's waiver of sovereign immunity, and one is the performance of discretionary functions or duties. Title 28 U.S.C. § 2680 provides in pertinent part:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680. Thus, the United States remains immune from suit for any injuries sustained as a result of the exercise of gov-

ernmental discretion, whether or not that discretion is exercised negligently or wrongfully, whether or not it is exercised at all, and whether or not it is abused. *See Blessing v. U.S.,* 447 F.Supp. 1160, 1164 (E.D.Pa.1978).

The issue on which this motion hinges is whether the DVA's notification to POW's as directed by the POW Act falls within the discretionary function exception to the FTCA. The Third Circuit has treated the exception as jurisdictional. *Griffin v. U.S.,* 500 F.2d 1059, 1064 (3d Cir.1974); *Gibson v. U.S.,* 457 F.2d 1391, 1392 n. 1 (3d Cir.1972); *see also Blessing,* 447 F.Supp. 1160, 1167 n. 6. Therefore, if the challenged activity in this case comes within the exception, the case must be dismissed.

■ The discretionary function exception to the FTCA "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984). The Supreme Court set out the broad outlines of the discretionary function in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). It stated:

> The 'discretion' protected by the section is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according to one's judgment of the best course, ...

*Id.* at 34, 73 S.Ct. at 967. While declining to define "precisely where discretion ends" apart from the specific case, the Supreme Court went on to state:

> [T]he 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.

*Dalehite,* 346 U.S. at 35–36, 73 S.Ct. at 967–68 (footnote omitted). In *Dalehite,* the Supreme Court held that acts of government negligence in adopting plans and specifications for the manufacture and export of ammonium nitrate fertilizer, which resulted in a disastrous explosion and loss of life, were discretionary decisions protected from liability by section 2860.

**The 2–Pronged Test**

■ In *U.S. v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court described a 2–pronged test for determining whether an act comes within the discretionary function exception of section 2680(a). Under the first prong of the test, to qualify as a discretionary function, an action must involve an element of judgment or choice. This requirement is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* at 321, 111 S.Ct. at 1272 (internal quotation marks and citation omitted). An example of such a prescribed course of action occurs in *Berkovitz by Berkovitz v. U.S.,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). There, the parents of Kevan Berkovitz, who had contracted polio after taking oral polio vaccine, sued the government under the FTCA for approving production and distribution of the vaccine. The plaintiffs alleged that the government had licensed a laboratory to manufacture and market polio vaccine and had approved the specific lot of vaccine that contained Kevan's dose without adhering to the safety requirements of the governing statute and regulations. The applicable statute provided:

> Licenses for the maintenance of establishments for the propagation or manufacture and preparation of products ... [including polio vaccines] may be issued only upon a showing that the establishment and the products for which a license is desired meet standards, designed to insure the continued safety, purity, and potency of such products, prescribed in regulations, and licenses for new products may be issued only upon a showing that they meet such standards.

42 U.S.C. § 262(d)(1). A regulation provided that a product license "shall be issued only upon examination of the product and upon a determination that the product complies with the standards prescribed in the regulations." 42 CFR § 73.5(a) (Supp.1964); 21 CFR § 601.4 (1987). Another regulation stated that an application for a license "shall not be considered as filed" until the National Institutes of Health's Division of Biological Standards receives the data regarding the product that the manufacturer is required to submit. 42 CFR § 73.3 (Supp.1964); 21 CFR § 601.2 (1987).

The plaintiffs in *Berkovitz* alleged that the government had licensed the manufacturer to produce the drug in question and had approved the release of the particular lot of the drug containing Kevan's dose without first receiving required the data showing that the product complied with regulatory safety standards. The Court held its alleged failure to do so did not fall within the discretionary function exception because the Division of Biological Standards "has no discretion to issue a license without first receiving the required test data; to do so would violate a specific statutory and regulatory directive." *Berkovitz*, 486 U.S. at 542–43, 108 S.Ct. at 1961–1962.

■ Once the court has determined that the challenged action or decision is discretionary, under the first prong of the test, it must apply the second prong of the test and determine whether the judgment or choice "is of the kind that the discretionary exception was designed to shield." *Gaubert*, 499 U.S. at 321, 111 S.Ct. at 1272 (internal quotations and citation removed). The *Gaubert* Court went on to explain that the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1958). It noted that the purpose of the exception was to prevent judicial 'second-guessing' of policy decisions through the medium of an action in tort. *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273.

An example the type of decision that the discretionary function exception was designed to protect is described in *U.S. v. S.A. Empresa*, which involved an airplane accident. In consolidated cases, the owner of a destroyed aircraft and the representatives of many of the passengers sued the United States for loss of property and wrongful death, respectively. In the Federal Aviation Act of 1958, by which Congress sought to promote safety of commercial aircraft, Congress had directed the Secretary of Transportation to establish minimum standards for aircraft design, materials, workmanship, construction, and performance. 49 U.S.C. § 1421(a)(1). To comply with this directive, the Secretary had developed a system of certification of aircraft design and manufacture in which the duty to insure compliance with the Federal Aviation Administration's regulations lay primarily with the aircraft's manufacturer and operator. The Administration policed compliance through a "spot-checking" program. The plaintiffs challenged the Federal Aviation Administration's decision to rely on private monitoring supplemented by "spot-checking" to insure the safety of aircraft. More specifically, they challenged its certification of the airplane in question as airworthy without inspecting it. The Supreme Court held that when the agency decided how to supervise and enforce its safety regulations, it was exercising discretionary authority of the most basic kind. *Empresa*, 467 U.S. at 820–21, 104 S.Ct. at 2767–68:

> [S]uch decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.

*Id.* at 820, 104 S.Ct. at 2767.

### Powers v. United States

In moving to dismiss this case on the ground that the challenged actions of the

DVA fall squarely within the discretionary function exception to the FTCA, the government relies on *Powers v. United States,* 996 F.2d 1121 (11th Cir.1993), which also involved a claimed failure to publicize government benefits. Property owners sued the United States under the FTCA for their uninsured flood losses, alleging they were due to the government's negligent failure to publicize the national flood insurance program. In their complaint, they alleged that the National Flood Insurance Act had placed a mandatory duty on the Director of the Federal Emergency Management Agency (FEMA) to publicize the availability of federally subsidized insurance. They further alleged that the Director had "totally failed" to perform his duty and that, as a result, they were unaware of the availability of such insurance and were uninsured when they suffered flood losses.

The government moved to dismiss the action for lack of subject matter jurisdiction, citing the discretionary function exception to the FTCA. Under the first prong of the 2–pronged test, the court noted that the relevant inquiry was "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Id.* at 1125. The statute in question directed the director of FEMA to take the following action:

> The Director shall from time to time take such action as may be necessary in order to make information and data available to the public, and to any State or local agency or official, with regard to—

> (1) the floor insurance program, its coverage and objectives, and

> (2) estimated and chargeable flood insurance premium rates, including the basis for and differences between such rates in accordance with the provisions of section 4015 of this title.

42 U.S.C. § 4020. The court concluded that Congress had not specifically prescribed a course of action for the Director of FEMA to follow, but rather, had given the Director

discretion to decide when and how best to make information and data available to the public regarding federally subsidized flood insurance. The Director must then make these decisions and act without reliance upon a fixed or readily ascertainable standard. The Director's decision clearly involves an element of judgment or choice and therefore involves the exercise of discretion.

*Powers,* 996 F.2d at 1125.

With respect to the plaintiffs' allegation that the Director had "totally failed" to publicize the program, the court took judicial notice of the fact that some efforts to publicize the program had been made. It concluded that the plaintiffs were really challenging the manner in which the Director had publicized federally subsidized flood insurance, and in doing so, they were challenging the exercise of a discretionary function.[1]

The *Powers* court further held that the challenged activity satisfied the second prong of the *Gaubert* test. It stated:

> By enacting the National Flood Insurance Program, Congress sought to alleviate the economic hardships caused by unforeseen flood disasters. Discretionary decisions concerning when and how to best publicize the insurance program necessarily involve consideration of the important economic and social policies underlying the program. The discretionary function exception to the [FTCA] protects precisely these types of decisions from "judicial 'second-guessing' ... through the medium of an action in tort."

*Id.* at 1126 (quoting *Empresa,* 467 U.S. at 814, 104 S.Ct. at 2764) (internal citation omitted). The government argues that the *Powers* case is closely analogous to the present one.

**Applying the 2–Pronged Test**

■ In the instant case, plaintiff contends that the first prong of the 2–pronged discretionary function test is not satisfied in this case because the statute provided a specific mandatory directive to the DVA to seek out

---

1. Under the language of the statute, once the court had determined that the action was discretionary, "the [total] failure to exercise or perform a discretionary function or duty on the part of a federal agency" would not have resulted in government liability. 28 U.S.C. § 2680(a).

former prisoners of war and notify them of regulatory changes. He argues that, "[b]ecause the DVA was directed specifically to perform a function by statute, namely to seek out the former POWs, there was no element of judgment or choice involved, thus, there was no discretionary function." (Plaintiff's memorandum in opposition to defendant's motion to dismiss at 7.)

The statute provides that the administrator "shall, to the maximum extent feasible ..., seek out former prisoners of war and provide them with information regarding applicable changes in the law...." Plaintiff contends the language "seek out ... and provide ... with information" is a specific and mandatory directive for the DVA to contact former POWs individually by sending or mailing them the information. The language of the statute does not support that interpretation. By qualifying "seek out ... and provide" by "to the maximum extent feasible," Congress explicitly left it to the DVA to decide the manner and means of carrying out its directive.

Nor does the legislative history of the POW Act support the view that Congress intended to direct the DVA to carry out the task of informing former POWs in a specific manner. The House of Representatives bill was the one that was passed, and the House Report, No. 97–28, set out separate recommendations for identifying the former POWs from VA records and for publicizing the changes. However, it failed to recommend that an effort be made to contact the former POWs individually; instead, it recommended other means of publicizing the benefits of the POW act.[2] In the final bill neither recommendation was included. Congress was evidently more concerned with substantive changes in the law than with the administrative details of publicizing the benefits. Those

were left to the administrator "to the maximum extent feasible."

The statute could have specified that the administrator shall make an effort to contact former POWs individually, but it did not; nor did it prescribe any specific course of action, as did the statute in *Berkovitz,* which specified that licenses could be issued "only upon a showing that the establishment and the products ... meet standards ... prescribed in regulations...." 42 U.S.C. § 262(d). This is not a case like *Berkovitz,* where the government action violated "a specific statutory and regulatory directive." *Berkovitz,* 486 U.S. at 542–43, 108 S.Ct. at 1961–62. The statute in this case provides no guidance as to how the administrator is to "seek out ... and provide ... with information" the former POWs, nor does it provide any standards for compliance with this directive as it did in *Berkovitz.* It merely says that the administrator is to carry out the task "to the maximum extent feasible." That language directs the administrator to exercise his judgment in deciding how to get the job done.

This case is much more like *Powers,* in which the statute provided that the director of FEMA "shall ... take such action as may be necessary in order to make information and data available to the public." 42 U.S.C. § 4020. In both cases, Congress "has given the [administrator] discretion to decide when and how best to make information and data available." *Powers,* 996 F.2d at 1125. In both cases, the administrator "must make these decisions and act without reliance upon a fixed or readily ascertainable standard." *Id.* In *Powers,* the court held that the administrator's decision "clearly involves an element of judgment or choice and therefore involves the exercise of discretion." *Id.* The challenged action in this case similarly involves the exercise of choice or judgment in

---

**2.** The report made the following recommendation for publicizing the act:

*Recommendation.*—That the VA periodically emphasize the special health care and compensation procedures applicable to former POWs through its agency information and education programs, and that a copy of this report be provided each VA Medical Center and Regional Office as a reference on former POWs.

H.R.Rep. No. 97–28, 1st Sess. 8 (1981) *reprinted in* 1981 U.S.C.C.A.N. 1410, 1416. This recommendations appeared just after one recommending that the agency identify former POWs in its records, but there was no recommendation that those identified be individually notified of the changes brought about by the act.

deciding how best to inform former POWs of the changes in the law within the limits of feasibility.

Plaintiff contends that the phrase "seek out" required defendant to do more than it did. He argues:

No reasonable person would agree with the Defendant that publishing a pamphlet which was not even sent to known individuals affected, and which failed even to mention the specific regulatory changes, constitutes "seeking out" former POWs. No reasonable former POW who had undergone the terror and deprivation of captivity would agree with the DVA that publishing a pamphlet for display purposes was a reasonable response to the congressional mandate.

Plaintiff's memorandum at 7. Even if plaintiff is correct that the DVA's response was unreasonable, it has not violated the statute. If Congress allowed the administrator to exercise his judgment in to deciding how to seek out and inform former POWs, and I hold that it did, the first prong of the discretionary function test is satisfied even if the administrator abuses his discretion or fails to exercise it. Section 2680 bars any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." 28 U.S.C. § 2690. I conclude that the challenged action of the DVA is a discretionary action satisfying the first prong of the discretionary function test.

■■■ Because the first prong of the test has been satisfied, we must consider the second prong: whether the discretion exercised in this case was "of the kind that the discretionary exception was designed to shield." *Gaubert,* 499 U.S. at 321, 111 S.Ct. at 1272. As the *Gaubert* Court explained, the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. at 1273 (quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1958). In this case, Congress directed the administrator to make policy decisions when it stated that the administrator shall seek out and inform former POWs "to the maximum extent feasible." Feasibility con-

templates myriad practical considerations and decisions. As the Supreme Court stated in *Empresa,* such decisions "require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *Empresa,* 467 U.S. at 820–21, 104 S.Ct. at 2767–68. To say that the non-specific language of the statute compelled the DVA to make greater efforts than it did to contact former POW's would be to engage in just the kind of "second-guessing" of political, social, and economic judgments that the discretionary exception was designed to avoid.

Plaintiff tries to distinguish *Powers* with respect to the second prong of the test on the ground that the claim in that case "affected the population as a whole," whereas in this case, "Congress did not intend for the very people that the statute applied to be barred from recovery by the discretionary function exception or they would not have bothered to enact the statute." (Plaintiff's memorandum at 8.) I do not see a meaningful distinction based on the size of the population affected. In each case, there is a target group meant to benefit from the act; while former POWs are more readily identifiable than those affected by floods, in each case there are more and less effective, and more and less expensive, ways to reach the group affected by the statute. In this case, as in *Powers,* it was not an intent to limit or bar recovery that led Congress to defer to the discretion of the agency in administering the program it mandated. Rather, it was the agency's expertise, its knowledge, and its consequent ability to make the numerous policy decisions necessary to implement the program. In using the qualifying language "to the maximum extent feasible," Congress directed the DVA to decide how to balance the task of notifying former POWs against its other obligations. I conclude that the discretion exercised in this case was "of the kind that the discretionary exception was designed to shield." *Gaubert,* 499 U.S. at 321, 111 S.Ct. at 1272. It therefore satisfies the second prong of the discretionary function test.

## CONCLUSION

Because the challenged action in this case falls within the discretionary function exception to the FTCA, this court lacks jurisdiction over the case and it must be dismissed. It is very unfortunate that plaintiff did not learn earlier of the increased benefits to which he was entitled as a former POW. However, the DVA's decision as to how to carry out its mandate under the POW Act is the sort of discretionary function that Congress intended to shield from private tort actions when it enacted section 2680(a) of the Federal Tort Claims Act.[3]

An appropriate order follows.

## *ORDER*

AND NOW, this 12th day of March, 1996, upon consideration of the motion of defendant, the United States of America, to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), and the response of plaintiff, Weldon V. Lane, thereto, it is hereby **ORDERED** that the defendant's motion is **GRANTED** and the complaint is dismissed.

---

**3.** Defendant makes the argument that, even if there is jurisdiction, the case must be dismissed because plaintiff is precluded from recovery of civil damages by 38 U.S.C. § 511, which gives the agency the power to decide all questions affecting the provision of benefits by veterans. It argues that plaintiff, having been denied benefits, is trying to make an "end run" around the statute. Because I have determined that I do not have jurisdiction over this case, I need not address that issue.